## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

COLLEEN A.,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

Defendant.

Case No. 24-cv-04601

Judge Mary M. Rowland

### MEMORANDUM OPINION AND ORDER

Plaintiff Colleen A.[2] filed this action seeking a reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits under the Social Security Act (the Act) and a remand for further proceedings. [1]. For the reasons stated herein, the Court denies Plaintiff's motion.

### I.    PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits in May 2021 alleging she became disabled on April 30, 2021. [6-1] at 224–30.[3] The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. [6-1] at 18 (ALJ decision). An online video hearing was held on April 11,

---

[1] Frank Bisignano has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

[2] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[3] For the Administrative Record ([6-1], [6-2]), the Court uses the page numbers stamped in the bottom right-hand corner and referenced in the Court Transcript Index. This is consistent with the practice of the parties.

2023, where the ALJ, Plaintiff, and her attorney participated by video and an impartial vocational expert participated by telephone. *Id.* On July 6, 2023, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act.[4] *Id.* at 20–30.

The ALJ applied SSA's five-step evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since her alleged disability onset date of April 30, 2021. [6-1] at 20. At step two, the ALJ found Plaintiff had severe impairments of inflammatory arthritis, disorders of the skeletal spine, and disorders of the joints of the bilateral hips, the right shoulder, the left wrist status post-surgery, and the bilateral knees. *Id.* The ALJ also noted stable, non-severe impairments of hypertension, obesity with history of gastric bypass, diabetes mellitus, sleep apnea, hiatal hernia, vulvar lesion benign, and ischemic heart disease. *Id.* at 21. The ALJ determined that "the record of evidence is void of support that [Plaintiff's] non-severe impairments alone or in combination cause more than minimal limitations in [Plaintiff's] ability to perform basic work activity." *Id.* In particular, the ALJ noted that the record reflected no evidence that Plaintiff's obesity had "any specific or

---

[4] In making her determination, the ALJ conducted the five-step sequential evaluation process promulgated by the Social Security Administration (SSA) to determine disability. *See* 20 C.F.R. § 404.1520(a). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The burden of proof is on the claimant for the first four steps before shifting to the SSA at step five. *Fetting v. Kijakazi*, 62 F.4th 332, 336–37 (7th Cir. 2023). "The ALJ determines whether the parties have met their burden by a preponderance of the evidence." *Martinez v. Kijakazi*, 71 F.4th 1076, 1079 (7th Cir. 2023) (citing 20 C.F.R. § 404.953(a)).

quantifiable impact on her pulmonary, musculoskeletal, endocrine, or cardiac functioning," and therefore concluded that condition was not a severe impairment. *Id.*

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments enumerated in the regulations. *Id.* at 22. In reaching this conclusion, the ALJ considered all of Plaintiff's severe and non-severe impairments individually and in combination and reviewed the opinions of the state agency medical consultants who reached the same conclusion at the initial and reconsideration levels of the administrative process. *Id.* The ALJ considered all listings, including 1.15, 1.16, and 1.18, which she determined were not met because Plaintiff did not have a documented need for particular mobility or assistive devices or an inability to use upper extremities effectively. *Id.* The ALJ also considered Listing 14.09 for inflammatory arthritis, which she concluded was not met because Plaintiff did not have persistent deformity or inflammation in any major peripheral joints preventing effective ambulation or fine or gross motor movements, ankylosing spondylitis or other spondyloarthropathies, or repeated manifestations of inflammatory arthritis with at least two constitutional signs or symptoms in combination with marked limitations in activities of daily living, social functioning, concentration, persistence or pace. *Id.*

Before analyzing step four, the ALJ assessed the claimant's residual functional capacity (RFC), which is "the maximum that a claimant can still do despite [her] mental and physical limitations . . . based upon the medical evidence in the record

and other evidence, such as testimony by the claimant or [her] friends and family."
*Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a). The
ALJ determined that Plaintiff had the RFC to perform light work as defined in the
regulations, with the following additional limitations: no more than frequent climbing
ramps and stairs, and occasional climbing ladders, ropes, or scaffolds; frequent
stooping, kneeling, crouching, and crawling; frequent overheard reaching bilaterally;
no more than frequent handling and fingering bilaterally; and avoiding temperature
extremes and humidity. [6-1] at 22. To make this finding, the ALJ explained she
considered all symptoms and the extent to which these symptoms can reasonably be
accepted as consistent with the objective medical evidence pursuant to 20 C.F.R. §
404.1529 and SSR 16-3p, as well as medical opinions and prior administrative
findings pursuant to 20 C.F.R. § 404.1520c. *Id.* After completing her review, the ALJ
concluded that Plaintiff's medically determinable impairments could reasonably be
expected to cause her alleged symptoms, but her statements regarding the intensity,
persistence, and limiting effect of her symptoms were not entirely consistent with the
medical evidence or other evidence in the record. *Id.* at 24.

The ALJ discussed several reasons for her determination, including a lack of
support in the medical record for Plaintiff's allegations regarding medication side
effects; the minimal conservative treatment of Plaintiff's disorders of the joints of her
bilateral hips, right shoulder, left wrist, and bilateral knees with no specialized or
further surgical procedures after June 2021; and Plaintiff's noncompliance with
medical advice including a failure to seek alternative treatment for her CPAP or begin

4

taking Cymbalta when prescribed. *Id.* at 24, 28. The ALJ observed that Plaintiff's allegations regarding her exertional and postural restrictions were not supported by any provider reports in her medical record and were contradicted by Plaintiff's reported activity level of exercising and walking 10,000 steps per day as well as her providers' recommendation to increase her exercise to 150 minutes per week. *Id.* at 28. In addition, the ALJ considered the available medical opinions and prior administrative medical findings, including the opinions proffered by the state medical consultants Drs. Hinchen and Jhaveri, the medical source statement by Dr. Abiona, and the opinion rendered by Plaintiff's treating nurse practitioner, Krystyne Doty, ARPN, on March 28, 2022. *Id.* at 28–29. The ALJ concluded that the opinion from Dr. Abiona was unpersuasive because it lacked specificity and vocationally relevant terms for the assessment of RFC. *Id.* at 29. The ALJ also found Doty's opinion unpersuasive and concluded that it was not consistent with or supported by Doty's own objective medical findings, Plaintiff's course of treatment, or the medical record as a whole. *Id.*

At step four, upon consideration of Plaintiff's RFC in combination with testimony from the vocational expert, the ALJ determined that Plaintiff was capable of performing her past relevant work as an administrative clerk and therefore was not disabled under the Act. *Id.* at 30. The Appeals Council denied Plaintiff's request for review. [6-1] at 1–7. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II.    STANDARD OF REVIEW

Section 405(g) of the Act authorizes judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). Courts may not engage in their own analysis of whether the plaintiff is disabled, nor may they "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [their] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "The ALJ's decision will be upheld if supported by 'substantial evidence.'" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014)). The Supreme Court has stated that "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). Courts accord great deference to the ALJ's determination, but "must do more than merely rubber stamp the [ALJ]'s decision []." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (alterations in original) (quoting *Erhart v. Sec'y of Health & Hum. Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)). The deferential standard "does not mean that we scour the record for supportive evidence or rack our

6

brains for reasons to uphold the ALJ's decision." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports her ultimate determination." *Noonan v. Saul*, 835 F. App'x 877, 880 (7th Cir. 2020). "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Courts may also reverse and remand the decision "if the ALJ committed an error of law or based her decision on serious factual mistakes or omissions." *Judy M. v. Kijakazi*, No. 21 C 2028, 2023 WL 2301448, at *3 (N.D. Ill. Feb. 28, 2023) (citation omitted). If substantial evidence supports the ALJ's decision and reasonable minds could disagree on whether a claimant is disabled, the court must affirm the Commissioner's decision. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

## III.    DISCUSSION

Plaintiff moves to reverse the Commissioner's final decision and remand her case for further proceedings. *See generally* [9]. She asserts three grounds for reversal. First, Plaintiff argues that the ALJ erred in discounting the March 2022 opinion rendered by Krystine Doty, Plaintiff's treating rheumatology arthritis (RA) nurse practitioner. *Id.* at 2–7. Second, Plaintiff argues that the ALJ erred in her credibility determination of Plaintiff's subjective statements at the hearing. *Id.* at 7–11. Finally, Plaintiff argues that the ALJ's RFC analysis lacked proper support from the record and explanation of the reasoning. *Id.* at 12–15. The Court analyzes each argument in

turn below.

### A. The ALJ did not err in assessing Nurse Doty's March 2022 opinion.

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Nurse Practitioner Doty ("NP Doty"). [9] at 2–7. The Commissioner responds that the ALJ appropriately considered the evidence in the record, and substantial evidence supports the ALJ's findings. [10] at 5–9. The Court agrees with the Commissioner.

The revised regulatory framework, which applies to all application filed on or after March 27, 2017, governed the ALJ's evaluation of the medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01 (Mar. 27, 2017)). 20 C.F.R § 404.1520c provides that the most important factors the ALJs are to consider when evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. The supportability factor requires the ALJ to consider the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ's decision should allow a reviewing court "to trace the path of the adjudicator's reasoning," but need not explain how each piece of evidence was considered. 82 Fed. Reg. 5844, 5858.

The ALJ found NP Doty's March 28, 2022 opinion unpersuasive. [6-1] at 29. In her assessment, NP Doty estimated that Plaintiff would be limited to walking two city blocks without rest or severe pain; could stand ten minutes and sit ten minutes

8

at one time before needing to get up or sit down or walk around; could sit and stand/walk less than two hours total in an eight-hour working day; and required ten minutes of walking every thirty minutes. *Id.* at 925–26. NP Doty also indicated Plaintiff needed to take unscheduled breaks every ten to fifteen minutes for ten minutes due to muscular aches and chronic fatigue; could occasionally lift and carry less than ten pounds, rarely lift and carry ten pounds, never carry twenty pounds or more; and that Plaintiff could use her arms for five percent of an eight hour workday, and use hands and fingers twenty five percent. *Id.* at 926. NP Doty assessed that Plaintiff's pain and symptoms frequently would interfere with the attention and concentration needed to perform everyday work tasks and that Plaintiff's impairments would cause her to miss more than four days of work per month. *Id.* at 925, 927.

In support of finding NP Doty's March 2022 opinion unpersuasive, the ALJ explained that the assessment was inconsistent with NP Doty's own objective findings, the course of treatment prescribed for Plaintiff, and Plaintiff's medical records. *Id.* at 29. The ALJ specifically contrasted NP's Doty's assessment with her findings that were mostly unremarkable and stated that Plaintiff's rheumatoid arthritis was stable. *Id.* Furthermore, the ALJ noted that NP Doty did not refer Plaintiff for more intensive treatment, which was consistent with Plaintiff's medical records that reflected minimal conservative treatment overall. *Id.* Finally, the ALJ stated NP Doty's findings were inconsistent with Plaintiff having normal gait and mostly normal strength. *Id.* The Court finds that the ALJ's determination that

9

NP Doty's March 2022 opinion was unpersuasive was supported by substantial evidence.

Plaintiff argues that the ALJ reversibly erred in analyzing the consistency of Doty's opinion with the medical record in numerous ways. As the Court has found that ALJ has met the articulation standard for the required elements of consistency and supportability, there exists an independent basis for her decision regardless of the merits of Plaintiff's other arguments. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Nevertheless, the Court addresses Plaintiff's arguments.

First, Plaintiff contends that the ALJ's opinion is mere speculation based on what Plaintiff characterizes as impermissible exercise of the ALJ's independent medical judgment rather than medical evidence in the record. [9] at 3. Specifically, she claims the ALJ erred by noting that Plaintiff's medical records indicated she had a normal gait and strength without identifying medical evidence stating that those findings undermined NP Doty's opinion. *Id.* Plaintiff's assertion is unfounded, and the Court is not persuaded the ALJ made independent medical decisions.

The ALJ's opinion reflects that her decision to discount NP Doty's opinion was supported by many noted inconsistencies with the medical record. *See generally* [6-1] at 23–29 (discussing Plaintiff's visits with primary care, rheumatology, neurology, and orthopedic surgery as well as the opinions provided by the state agency medical consultants Dr. Hinchen and Dr. Jhaveri, in determining that Doty's opinion was inconsistent). Relevant here, the ALJ found reports of Plaintiff's normal gait and mostly normal strength were inconsistent with NP Doty's opinion, including that

10

Plaintiff is limited to walking two city blocks without rest or severe pain and is unable to stand or sit for more than ten minutes at a time. *Id.* at 29. The ALJ considered the objective evidence within the medical record, including Dr. Jhaveri's assessment that NP Doty's opinion conflicted with other evidence in the record (*id.* at 123), and weighed conflicting medical opinions, but she did not make independent medical decisions. *See generally* [6-1] at 23–29.

Plaintiff's reliance on *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014) and *Engstrand v. Colvin*, 788 F.3d 655 (7th Cir. 2015) is misplaced. [9] at 3. Both cases involved an ALJ interpreting a medical test or finding in a way that lacked any support in the medical record. *See Moon*, 763 F.3d at 722 (holding that the ALJ erred by relying on an MRI as evidence of the severity of migraines when no medical provider made such a connection in the plaintiff's medical record); *Engstrand* , 788 F.3d at 660 (holding that the ALJ erred by assuming a connection between a 10-gram monofilament test and the plaintiff's reported pain where no correlation was made by any provider within the medical record). Unlike those cases, the ALJ here considered evidence of Plaintiff's normal gait *when walking* in weighing contradictory medical opinions regarding Plaintiff's limitations *when walking*. [6-1] at 29. Given the noted inconsistencies with the record as a whole and the lack of internal supportability, it was reasonable that the ALJ gave "more weight to medical opinions with more internal consistency and support." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023); *see also Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the

11

physician's treatment notes.").

Next, Plaintiff argues that the ALJ "mischaracterized the evidence by noting only those normal findings, but not abnormal findings," and provides a list of symptoms Plaintiff contends the ALJ failed to consider when evaluating NP Doty's opinion. [9] at 3–4. The Commissioner responds that the ALJ reasonably discounted NP Doty's opinion as unsupported by her own notes and inconsistent with other evidence in the medical record, including the opinions provided by state agency consultants. [10] at 6. The Court agrees with the Commissioner.

Most of the symptoms listed cannot be used as evidence of consistency with the medical record for NP Doty's March 2022 opinion for one of three reasons. First, the listed symptoms must be consistent with NP Doty's opinion to support it. *See, e.g.,* *Bakke*, 62 F.4th at 1068 (An ALJ must "consider whether a medical opinion is consistent with the record as a whole."). But many of the symptoms listed by Plaintiff are not reflected in NP Doty's opinion or notes from the related office visit. For example, NP Doty's opinion does not indicate any right hip pain or reduced range of motion in any joints other than decreased shoulder elevation, and therefore, abnormalities regarding Plaintiff's right hip or reduced range of motion cannot be used as evidence of consistency with Doty's opinion [6-2] at 925. Moreover, with the exception of Plaintiff's right hip x-ray completed in January 2023, these symptoms were all discussed by the ALJ. *Id.* at 26–27.

Second, many of the abnormal findings cited by the Plaintiff are drawn from the consultative examination completed by Dr. Abiona in January 2022. *See* [9] at 3–

4 (citing [6-2] 805–14). The ALJ found this opinion unpersuasive ([6-1] at 29), and Plaintiff did not challenge that determination. *See generally* [9]; [13]. Furthermore, the ALJ discussed Dr. Abiona's observations in her decision, including the symptoms listed in Plaintiff's brief. [6-1] at 27. Finally, Plaintiff cited two observations from her March 2022 office visit with NP Doty.[5] [9] at 4. But because that visit is connected to the opinion at issue, those observations cannot be considered as evidence of consistency with the medical record as a whole or supportability from NP Doty's unrelated visits with Plaintiff.

The symptoms cited by Plaintiff that arguably are consistent with an element of NP Doty's March 2022 opinion are the shoulder x-ray and related rheumatology visit in August 2021 and the lumbar spine CT related to her visit with her orthopedic surgeon in June 2022. [9] at 3–4. Although these visits were not discussed within the ALJ's analysis of Doty's opinion, they are discussed elsewhere in the RFC assessment. Courts "review the ALJ's decision *holistically* to determine whether the ALJ grappled with evidence favorable to the claimant" and confirm the ALJ did not "ignore a line of evidence supporting a finding of disability." *Chrisman ex rel. N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (emphasis added) (quoting *Thorlton v. King*, 127 F.4th 1078, 1082 (7th Cir. 2025)); *see Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (holding that the ALJ's discussion of symptoms within step-five analysis could be applied to the step-three rationale because "requir[ing] the ALJ to repeat such a discussion throughout [the] decision would be redundant") (quoting

---

[5] Decreased shoulder elevation and reduced grip strength. *See* [9] at 4; *see also* [6-2] at 1323.

*Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015)). Here, the ALJ did not "simply cherry-pick the record, as [Plaintiff] claims," but acknowledged both normal and abnormal findings in her consideration of Doty's opinion. *Bakke*, 62 F.4th at 1068.

Additionally, Plaintiff asserts that the ALJ improperly used NP Doty's description of her RA as "stable" to draw conclusions about the ongoing symptoms and severity rather than merely as an indication that her condition had not improved or deteriorated over time. [9] at 5. The Commissioner responds that the ALJ recognized Plaintiff's RA as a severe impairment that significantly limited her work capacity and properly weighed the differing medical opinions in determining the influence of that impairment on Plaintiff's RFC. [10] at 8. The Court agrees with the Commissioner.

The ALJ connected Plaintiff's stability with mostly unremarkable objective findings, conservative course of treatment, and state agency consultant opinions in discounting Doty's opinion. [6-1] at 29. As one of many reasons cited to discount Doty's opinion, the Court finds nothing objectionable in the ALJ's observation that Doty described Plaintiff's condition as stable in combination with unremarkable physical examinations. Even if this mention were improper, the ALJ's discussion of the inconsistency and lack of supportability "certainly rested on a sufficient factual basis to support [her] ultimate conclusion" to discount Doty's opinion. *Berger*, 516 F.3d at 545.

Finally, the ALJ noted that "Ms. Doty did not refer the claimant for more intensive treatment. At one point Ms. Doty noted that she did not know the etiology

14

of the claimant's symptoms." [6-1] at 29. Plaintiff argues that "[t]he ALJ is not permitted to discount a provider's opinions based on lack of recommendation for more intensive treatment without some evidence that more intensive treatment was available and reasonable for the claimant." [9] at 6. Plaintiff also argues that the ALJ erred in noting that NP Doty's record reflects an unknown etiology for Plaintiff's symptoms without explaining how that observation was applied in her determination. *Id.* at 5. The Commissioner responds that the ALJ reasonably found NP Doty's opinion inconsistent with her current treatment and lack of referral for more intensive treatment, and that the ALJ merely observed NP Doty's own statement of the uncertain etiology of Plaintiff's symptoms. [10] at 6.

On both points, the ALJ's analysis fails to "reflect[] an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The ALJ failed to identify evidence that more intensive treatment was available for Plaintiff's RA or explain how she was using the unknown etiology of symptoms in her decision. [9] at 7, 9. However, "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 Fed. App'x 717, 722 (7th Cir. 2009) (emphasis in original). As "this kind of error is subject to harmless-error review . . . we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Here, the ALJ provided substantial evidence to support her decision to discount Doty's opinion due to the lack of supportability and consistency with the medical record, and therefore any

deficiency regarding her discussion of the unknown etiology of Plaintiff's symptoms or her course of RA treatment would not affect the outcome of her determination. Thus, the ALJ's discussion of both issues would not constitute reversible error.

In sum, the Court finds the ALJ built a logical bridge between the evidence in the record and the ALJ's assessment of NP Doty's opinion. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion.").The ALJ "properly considered [Doty's] opinion, articulated [her] reasons for giving it less weight, and was within [her] discretion for giving it the weight [she] did." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023). No remand is necessary on this basis.

## B. The ALJ's credibility determination of Plaintiff's statements was legally sufficient.

Plaintiff argues the ALJ failed to properly evaluate her statements about her symptoms and limitations pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p. [9] at 7–11. Courts "review an ALJ's credibility determination with deference, for an ALJ, not a reviewing court, is in the best position to evaluate credibility." *Simula v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). When supported by specific evidence from the record, a credibility decision will not be overturned unless it is "patently wrong." *Curvin*, 778 F.3d at 651. A decision is "patently wrong" if the decision "lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). In drawing her conclusions, the ALJ must "explain her decision in such a way that allows [the court] to determine whether she reached her decision in a rational

manner, logically based on her specific findings and the evidence in the record." *Id.* (citing *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)). "In making a credibility finding the ALJ must evaluate the claimant's pain level, medication, treatment, daily activities, and limitations." *Schomas*, 732 F.3d at 708–09. "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other *objective* evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (emphasis added).

Plaintiff claims the ALJ erred in discounting her subjective statements for multiple reasons. First, Plaintiff asserts that the ALJ failed to provide a sufficient explanation for her determination that Plaintiff's subjective statements were not consistent with the record. [9] at 7. The Commissioner responds that the ALJ gave reasoned consideration to Plaintiff's statements, including her pain complaints and precipitating factors, before concluding that there were inconsistencies between Plaintiff's statements, the medical record, and her course of treatment. [10] at 10. The Court agrees with the Commissioner.

Here, the ALJ noted that Plaintiff's statements of significant medication side effects were not supported by the medical record. [6-1] at 24. The medical record consistently contradicts Plaintiff's statements of significant side effects from her medication including fatigue, memory loss, and falls. *See, e.g.,* [6-2] at 823, 1360, 1368, 1441 ("den[ying] medication side effects" at rheumatology visits in May 2021, and February, July, and October 2022.); *id.* at 1035 ("den[ying] memory loss" at June 2022 orthopedic visit); *id.* at 1035 (noting "no fall history" at June 2022 neurology

visit). The ALJ also noted instances in the medical record where Plaintiff reported having fewer interval flares than indicated in her hearing testimony. [6-1] at 28. *Compare id.* at 26 (describing Plaintiff's November 2021 rheumatology visit with Dr. Geringer where she reported "ha[ving] had no interval flares" since her last visit in August); *with id.* at 27 (describing her January 2022 consultative visit with Dr. Abiona where Plaintiff reported "get[ting] about 3-4 flares per year") *and id.* at 92 (Plaintiff testifying "I don't know where you read [the estimate of 3–4 flares per year], but no. There's much more than that.").

The Court agrees that the ALJ "cannot disbelieve [Plaintiff's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th. Cir. 2006). However, the ALJ did not determine Plaintiff's "severity of pain" solely as "'read off' from a medical report." *Id.* The contradictions noted by the ALJ are sufficient "specific reasons supported by the record" to support the ALJ's credibility determination. *Curvin*, 778 F.3d at 651. An ALJ is permitted to "disregard[ Plaintiff's] subjective testimony where it contradicts with contemporaneous reports [she] made to [her] physicians and their independent observations." *Schloesser v. Berryhill*, 870 F.3d 712, 721 (7th Cir. 2017). Thus, the ALJ has "competently explain[ed]" her credibility determination with "specific reasons 'supported by the record.'" *Anita R. v. Bisignano*, 2025 WL 1446606 at *2 (N.D. Ill. May 20, 2025).

Plaintiff also claims that it was "illogical" for the ALJ to consider Plaintiff's stabilized treatment and improved symptoms in her credibility determination,

because it was undisputed that Plaintiff continued to experience pain and her "back conditions were not completely healed from surgery." [9] at 8–9. The ALJ was not tasked with determining whether Plaintiff experiences any pain, but if "the intensity and persistence of [Plaintiff's] pain," in combination with objective medical findings, "would lead to a conclusion that [Plaintiff] is disabled." 20 C.F.R. § 404.1529(a). After concluding that "some of her testimony was exaggerated" given her consistent denial of side effects in the medical record, the ALJ was "justified . . . in finding [Plaintiff's] testimony about pain exaggerated." *Johnson*, 449 F.3d at 807.

Next, Plaintiff argues that the ALJ's consideration of her noncompliance in using her CPAP and beginning the Cymbalta prescription was improper because Plaintiff provided "reasonable explanations" for both choices. [9] at 10. Plaintiff also argues that the ALJ unreasonably relied on Plaintiff's conservative course of treatment in discounting her testimony, without identifying evidence that "there was available additional treatment for her severe impairments that she neglected." *Id.* at 9. Failure to comply with treatments can impact an ALJ's credibility determination, unless "there are good reasons for the failure to complete the plan." *Murphy*, 759 F.3d at 816. As for the CPAP, the ALJ reasonably concluded that, while Plaintiff's claimed intolerance may be a valid explanation for Plaintiff's failure to comply with the CPAP treatment, it was not a reasonable explanation for her refusal to consider alternative treatment for sleep apnea. [6-1] at 28. Plaintiff's medical record contains recommendations from her treating providers that she consider alternative treatments. *See, e.g.*, [6-2] at 841 (recommending follow-up with PCP regarding

19

possible alternative treatments for sleep apnea at Plaintiff's October 2021 cardiology visit); *id.* at 1377 (discussing possible trial of an oral device in place of the CPAP at Plaintiff's May 2022 PCP visit). A reasonable person could conclude that Plaintiff's noncompliance with her CPAP and failure to seek alternative treatment impacted her ability to sleep and her reported fatigue, two complaints that were central to her hearing testimony. *See* [6-1] at 105. Plaintiff's argument as to Cymbalta fails for similar reasons. "[E]ven if reasonable minds could differ on the ALJ's rejection of [the plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

In arguing against the ALJ's characterization of her treatment as conservative, Plaintiff notes that she has had several surgeries to address her medical conditions, most recently a gastric bypass and spinal fusion. [9] at 9. However, as discussed by the ALJ, Plaintiff reported improved symptoms following her spinal surgery and was not seeking any treatment for her back after her June 2022 follow up visit. [6-1] at 25. The ALJ noted that Plaintiff continued to receive and benefit from steroid injections in her hip, *id.* at 27, which have been classified as "conservative treatment." *See, e.g., Olsen v. Colvin*, 551 Fed. App'x 868, 875 (7th Cir. 2014). At the hearing, Plaintiff stated that the injections help, and that she discussed hip surgery with her doctor but deemed it a consideration for "four or five years" in the future. [6-1] at 102.

Contrary to Plaintiff's arguments, her choices to forego treatment for her back pain, decline alternative treatments for sleep apnea, and postpone hip surgery are specific evidence "that more intensive treatment was available and reasonable for the

claimant." [9] at 6. Based on these facts, a reasonable person could conclude that Plaintiff's conservative treatment for hip and back pain was inconsistent with her reported severity of hip and back pain. There is no evidence in the record that Plaintiff offered a "good reason" for her failure to seek continued treatment for her back or more intensive treatment for her hip. *Craft*, 539 F.3d at 679 ("In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment."). *See also* [6-1] at 99-102.

The combination of Plaintiff's statements of improved symptoms in the medical record, her choice to maintain conservative treatment for her hip, her choice not to seek continued treatment for her back, her noncompliance with her CPAP, and her choice not to trial alternative treatments for sleep apnea as recommended by her treating providers, adequately supports the ALJ's credibility determinations. Even if this conclusion were in error, it does not negate the contradictions between the record and Plaintiff's claimed medication side effects, and "an ALJ's credibility assessment will stand 'as long as [there is] some support in the record.'" *Berger*, 516 F.3d at 546 (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir.2007)).

Finally, Plaintiff argues that the ALJ erred in finding her reported daily activities of walking 10,000 steps and providers' recommendation to exercise 150 minutes per week was inconsistent with her reported functional restrictions and neither was proof that she has the stamina for light work. [9] at 11. A reasonable person could conclude that walking 10,000 steps per day, combined with provider

reports of normal strength in lower extremities, provider recommendations to increase weekly exercise, and the state agency consultants' recommended limitations based on the medical record, are inconsistent with an inability to stand or walk for longer than 15 minutes as Plaintiff testified at the hearing. [6-1] at 98. It is clear the ALJ considered Plaintiff's activity level to determine whether her testimony about her limits was credible. The Court does not find that the ALJ's assessment violated SSR 16-3 or was so erroneous as to warrant remand.

Because the ALJ provided several valid reasons for discounting Plaintiff's subjective statements and in light of the deferential standard afforded to ALJs, the Court finds Plaintiff has not proven the ALJ's credibility determination was patently wrong. *Curvin*, 778 F.3d at 651. No remand is necessary on this basis.

### C. The ALJ's analysis of Residual Functional Capacity was legally sufficient.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Murphy*, 759 F.3d at 817). The ALJ, not a physician, must complete the RFC assessment, but the ALJ "cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023). Although the ALJ need not provide "a complete written evaluation of every piece of evidence" *Murphy*, 759 F.3d at 817, the RFC analysis

"must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski*, 48 F.4th at 774.

The ALJ found Plaintiff had the RFC to perform light work as defined in the regulations, with additional limitations, including no more than frequent climbing ramps and stairs; frequent overheard reaching bilaterally; no more than frequent handling and fingering bilaterally; and avoiding temperature extremes and humidity. [6-1] at 22. In reaching this determination, the ALJ relied on the opinions of two state agency consultants, Drs. Hinchen and Jhaveri, that addressed Plaintiff's functional limitations, to determine Plaintiff's work capacity. Plaintiff did not challenge the ALJ's assessment of or reliance on Dr. Hinchen's and Dr. Jhaveri's opinions.

Plaintiff first argues that the ALJ erred in extending the limitations recommended by the state agency consultants to include frequent bilateral fingering when both consultants recommended limiting only the left hand. [9] at 12. But the ALJ stated that she increased the fingering limitations to bilateral "[t]o accommodate [Plaintiff's] reduced grip strength." [6-1] at 28. The ALJ provided specific evidence from the record for her limitations when following the recommendations of the state agency consultants, and her explanation of the increased limitations for fingering is sufficient to demonstrate that she considered "the totality of [Plaintiff's] limitations" in her recommendation. *Jarnutowski*, 48 F.4th at 774.

As the Commissioner argues, Plaintiff was not prejudiced by the ALJ's inclusion of a more restrictive limitation than the doctors felt necessary. Moreover, courts in this circuit consistently find that increased limitations in an ALJ's RFC

analysis beyond those recommended by state agency doctors reflect "that the ALJ gave 'reasoned consideration' to the evidence." *Langley v. O'Malley*, 2024 WL 3649021, at *4 (7th Cir. Aug. 5, 2024). *See also, e.g., Burmester*, 920 F.3d at 510 (describing a "finding more limiting than that of any state agency doctor or psychologist" as "illustrating reasoned consideration" of the plaintiff's evidence); *Gale L-S v. Kijakazi*, 2023 WL 2746003, at *6 (N.D. Ill. March 31, 2023) (holding that although the ALJ did not agree that the plaintiff's requested accommodations were necessary, the fact that he included more restrictive limitations than the agency reviewers suggested indicated he "fully considered the evidence" in making the determination).[6]

Next, Plaintiff asserts that the ALJ failed to provide sufficient evidence to support her conclusion that Plaintiff could perform light work, and that the ALJ did not sufficiently consider Plaintiff's back and leg pain or the aggregate effects of obesity and fatigue on her other impairments in making her determination. [9] at 13–15. The Commissioner responds that the ALJ considered the medical record in detail throughout her decision, including discussion of obesity, and considered the recommendations of the state agency consultants, treating providers, and Plaintiff's statements in determining her RFC. [10] at 13–14. The Court agrees with the Commissioner.

---

[6] In her reply brief, Plaintiff argues that the Commissioner's reliance on *Burmester* and *Tutwiler v. Kijakazi*, 87 F.4th 853 (7th Cir. 2023)are misplaced because unlike in both cases, the ALJ here failed to support her recommendations with sufficient evidence. [13] at 6. As discussed above, when reading the ALJ's decision as a whole, there is substantial evidence presented to support her assessed limitations.

When arguing that obesity "could have contributed to difficulties . . . Plaintiff bears the burden of proof and must do more than raise a generic concern that the ALJ should have found some connection." *Tashika M. ex rel. K.S.M. v. Kijakazi*, 2022 WL 2816944, at *3 (N.D. Ind. July 19, 2022). Despite citing medical records regarding her RA, degenerative joint disease in her hip and knee, and degenerative disc disease in her spine, Plaintiff points to no specific evidence in the medical record or her testimony that provides evidence as to how obesity impairs her ability to work beyond her noted impairments. *See Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (holding that the ALJ's failure to explicitly consider obesity was harmless when the claimant did not explain how obesity hampers her ability to work); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding that even though the ALJ did not explicitly discuss the plaintiff's obesity, it "was factored indirectly into the ALJ's decision" through the ALJ's adoption of limitations recommended by doctors with awareness of the plaintiff's obesity).[7] The ALJ discussed Plaintiff's diagnoses throughout her report, acknowledged Plaintiff's obesity, and observed that "[t]he record of evidence is void of support that the claimant's non-severe impairments alone or in combination cause more than minimal limitations in her ability to perform basic work activity." [6-1] at 21.

Additionally, Plaintiff contends that the ALJ did not properly consider the

---

[7] Although Plaintiff argues in her reply brief that NP Doty considered obesity in her March 2022 opinion ([13] at 7), Doty's opinion does not mention obesity, (*see* [6-2] at 925–27). Merely recommending more severe limitations is not evidence of an impact of obesity on Plaintiff's conditions. *See Hernandez v. Astrue*, 277 Fed. App'x 617, 624 (7th Cir. 2008) (describing the plaintiff's burden to "articulate how her obesity exacerbated her underlying conditions and further limited her functioning" and noting that the plaintiff's medical records "make repeated references to [Plaintiff's] obesity . . . [yet] "contain 'no reference ... to any specific limitations caused by obesity'").

25

impact of fatigue on her conditions. [9] at 15. Although the ALJ did not provide a detailed discussion on fatigue, she thoroughly considered the impact of Plaintiff's RA and her failure to seek alternative treatment for sleep apnea, both conditions which cause fatigue. [6-1] at 21, 25-27. *See also Georgia K. v. O'Malley*, 2025 WL 240974, at *4 (N.D. Ill. Jan. 17, 2025) (holding that the ALJ's failure to "set forth a specific discussion on fatigue" was not a reversible error when she considered the plaintiff's conditions that cause fatigue).

Overall, the ALJ considered the possible limitations of functioning that can be exacerbated by obesity, including postural functions, ability to manipulate objects, tolerate extreme conditions, and fatigue, using the evidence available in the medical record and through Plaintiff's testimony as discussed above. The Court is satisfied that the ALJ has built a logical bridge between the evidence in the record and her RFC determination. *Peeters*, 975 F.3d at 641 ("The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion.").

## IV.    Conclusion

For these reasons, the Court affirms the ALJ's decision and Plaintiff's motion for summary judgment [9] is denied.  The Clerk is directed to enter judgment in favor of the Commissioner. Civil case terminated.

E N T E R:

Dated: September 30, 2025

MARY M. ROWLAND
United States District Judge